UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CRYSTAL BROWN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:18 CV 1676 (JMB) |
| ) | |
| CITY OF ST. LOUIS, MISSOURI, et al., ) | |
| ) | |
| Defendants. ) | |

## **MEMORANDUM AND ORDER**

Plaintiff Crystal Brown alleges that she was pepper-sprayed during a peaceful protest. She brings this civil-rights action against the City of St. Louis, Missouri (City), John Hayden, and William Olsten. Defendants move to dismiss plaintiff's first amended complaint, pursuant to Rule 8(a) and Rule 12(b)(6), Fed. R. Civ. P. In the alternative, defendants move to strike specific allegations, pursuant to Rule 12(b)(f). Plaintiff has filed a response in opposition and the issues are fully briefed. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

### **Background[1]**

On September 15, 2017, the Circuit Court of the City of St. Louis issued the verdict in <u>State of Missouri v. Stockley</u>, acquitting a police officer of first-degree murder in the shooting death of an African-American man. For several days following the verdict, members of the public engaged in protests around the metropolitan St. Louis area, targeting both the verdict and the use of force

---

[1] The Court relies on the factual allegations in plaintiff's amended complaint [Doc. # 17] and deems them to be true for the purposes of this Memorandum and Order.

by police officers more broadly. This case is one of several lawsuits that challenge the use of pepper spray by SLMPD officers during the Stockley protests[2] and directly parallels the case Aldridge v. City of St. Louis, Missouri et al., 4:18-CV-1677 (CAS), 2019 WL 1695982 (E.D. Mo. Apr. 17, 2019), which involves the same incident plaintiff proceeds on here.

On the evening of September 29, 2017, plaintiff was present at a protest near Busch Stadium, where a game was in progress. The SLMPD presence initially consisted of uniformed and bicycle officers who were later joined by SLMPD's Civil Disobedience Team. The members of this team wore "military-like tactical dress" and helmets and carried "long wooden batons and full-body riot shields." Amended Complaint at ¶¶ 39-43 [Doc. # 17]. Around 9:00 p.m., protestors began converging toward Busch Stadium. According to plaintiff, a video shows that protestors peacefully entered the intersection at Broadway and Walnut. Without warning, an SLMPD officer "violently threw Reverend Darryl Gray to the ground, breaking [his] glasses." Id. at ¶¶ 45-47. Several people — including protestors, elected officials, members of the media, and people who had attended the ball game — began to voice concern. Around the same time, two officers began to chase protestor Calvin Kennedy. While one officer grabbed Mr. Kennedy by the shirt, the other deployed a Taser against him. Protestors again spoke out in protest. Id. at ¶¶ 49-54.

---

[2] See, e.g., Robertson v. City of Saint Louis, Missouri, No. 4:18-CV-01570-JAR, 2019 WL 3323026 (E.D. Mo. July 24, 2019) (challenges to police conduct during protests on September 17, 2017); Davis v. City Of Saint Louis, Missouri, No. 4:18CV1574 HEA, 2019 WL 3304715, at *1 (E.D. Mo. July 23, 2019) (challenges to police conduct during protests on September 15, 2017); Faulk v. City Of St. Louis, Missouri, No. 4:18CV308 JCH, 2019 WL 3304716, at *1 (E.D. Mo. July 23, 2019) (challenges to police conduct during protests on September 17, 2017); Laird, et al. v. City of St. Louis, Missouri et al., 4:18-CV-1567 (AGF), 2019 WL 2647273 (E.D. Mo. June 27, 2019) (challenges to arrests during protests on September 17, 2017); Laney v. City of St. Louis, Missouri et al., 4:18-CV-1575 (CDP), 2019 WL 2423308 (E.D. Mo. June 10, 2019) (challenges to police activity on September 15, 2017); Aldridge v. City of St. Louis, Missouri et al., 4:18-CV-1677 (CAS), 2019 WL 1695982 (E.D. Mo. Apr. 17, 2019) (use of pepper spray by defendant Olsten on September 29, 2017).

According to plaintiff, defendant Olsten can be heard antagonizing the protestors, yelling at one, "Come and fuck me up then." Two police officers tried to move defendant Olsten away from the crowd and calm him down. Id. at ¶ 56. Video shows that defendant Hayden was standing within five feet of defendant Olsten who was becoming "more and more agitated." Id. at ¶¶ 57-58. Without giving a warning or dispersal order, defendant Olsten deployed pepper spray from a large cannister, hitting four people, including plaintiff, an elected official,[3] and a person in a wheelchair. After pepper spraying these people, Olsten walked away without arresting them. Id. at ¶¶ 60-63. Plaintiff was not offered medical care or the opportunity to wash the chemical agent out of her eyes or off her body and clothes. Id. at ¶ 71. Plaintiff alleges that defendant Olsten's conduct violated the terms of a settlement agreement in Templeton v. Dotson, 4:14-CV-2019 (CEJ), under which the City agreed not to use chemical agents against "individuals engaged in non-criminal activity" without first issuing warnings or as a punitive response to the exercise of constitutional rights. Id. at ¶¶ 31, 36.

On November 15, 2017, the Court entered a preliminary injunction in Ahmad v. St. Louis, 4:17-CV-2455 (CDP), in which plaintiffs challenged the use of chemical agents by SLMPD officers against protestors on September 15, 2017. Id. at ¶¶ 72-75. The Court found that the Ahmad plaintiffs were likely to prevail on the merits of their claims that their First Amendment rights were violated by the City's customs or policies regarding the use of hand-held chemical agents. The Court further found that the use of such agents against nonviolent protestors circumvented the protections of the Templeton settlement agreement. In addition, the Court found that the plaintiffs' evidence showed that officers exercised their authority in an arbitrary and retaliatory fashion to punish protestors. Id. at ¶ 75.

---

[3] The elected official is Rasheen Aldridge. See Aldridge, 4:18-CV-1677 (CAS).

Plaintiff here asserts claims under § 1983 against defendants Olsten and Hayden for violations of her rights to the freedom of association and freedom of speech under the First and Fourteenth Amendments (Count I), against all three defendants for conspiracy to deprive plaintiff of her civil rights (Count II), against the City for a custom of conducting unreasonable searches and seizures and using excessive force and for failure to train, discipline, and supervise (Count III), and against defendant Olsten for excessive force (Count VII). She also asserts state law claims against all defendants for assault (Count IV), intentional and negligent infliction of emotional distress (Counts V and VI), and battery (Count VIII). Plaintiff has attached as exhibits to her complaint the September 15, 2017, verdict in Stockley, the temporary restraining order and settlement agreement in Templeton, and the transcript and preliminary injunction order in Ahmad.

Defendants move to dismiss the complaint in its entirety for failure to comply with the "short and plain statement" requirement of Rule 8(a). The City moves to dismiss under Rule 12(b)(6), arguing that plaintiff fails to allege facts necessary to support her § 1983 claims of civil conspiracy and municipal liability claims and that it is entitled to sovereign immunity in her state tort claims. Defendant Hayden moves to dismiss plaintiff's § 1983 claims, arguing that plaintiff fails to allege that he personally participated in the alleged violations of her constitutional rights. Defendants Hayden and Olsten argue that plaintiff's state-law claims against them are barred by the official immunity doctrine. Finally, defendants move to strike some allegations under Rule 12(f). Defendant Olsten has not moved to dismiss plaintiff's claims in Counts I and VII.

**Discussion**

A. <u>Motion to dismiss under Rule 8(a)</u>

Defendants move to dismiss the amended complaint under Rule 8(a), arguing that the complaint is "replete with tendentious and immaterial allegations attacking the integrity of the

4

Missouri courts, injecting spurious issues to which defendants cannot possibly frame a response, and including voluminous exhibits and references to other litigation . . . without specifying wherein and how the exhibits reflect facts germane to plaintiff's claims." [Doc. # 25 at 2]. Defendants further object that the complaint includes "inflammatory rhetoric ill-suited for a complaint" and "imposes an unnecessary burden on defendants in seeking to understand the claims actually asserted." In addition, defendants argue, the paragraphs dealing with the alleged violation of the settlement agreement in Templeton are improper under Rule 408, Fed. R. Evid. Finally, defendants object to plaintiff's "inclusion of voluminous exhibits."

Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief," while Rule 12(b)(6) provides for a motion to dismiss based on the "failure to state a claim upon which relief can be granted." To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A complaint states a plausible claim for relief if its 'factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009) (quoting Iqbal, 556 U.S. at 678). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a motion to dismiss. Iqbal, 556 U.S. at 678 (citation omitted). As noted by other judges addressing the same challenge in the related cases, as a result of the plausibility requirements set forth in Twombly and Iqbal, "complaints naturally tend to include more factual detail and be longer." Aldridge, 2019 WL 1695982, at *4; Laney, 2019 WL 2423308, at *3; see also Runnion *ex rel.* Runnion v. Girl Scouts of Greater Chicago & Nw. Ind., 786 F.3d 510, 526 (7th Cir. 2015) ("plaintiff must include enough

details about the subject-matter of the case to present a story that holds together") (internal quotation marks and citation omitted); Hernandez v. TLC of the Bay Area, Inc., 263 F. Supp. 3d 849, 853 (N.D. Cal. 2017) ("plaintiffs must include sufficient factual enhancement to cross the line between possibility and plausibility") (internal quotation marks and citation omitted).

The complaint here is 25 pages long, contains numbered paragraphs, identifies each defendant by name, makes specific allegations as to each defendant's conduct, and sets forth separate counts that identify each claim and the defendants against whom it is asserted. Cf. Michaelis v. Nebraska State Bar Ass'n, 717 F.2d 437, 439 (8th Cir. 1983) (affirming dismissal of a 98-page pro se complaint, the "style and prolixity" of which "would have made an orderly trial impossible"); Smith v. Republic Servs., Inc., 2017 WL 4038143, at *3 (E.D. Mo. Sept. 13, 2017) (dismissing complaint under Rule 12(b)(6), noting it violated Rule 8(a) because it did not contain numbered paragraphs, was "overly wordy with an incomprehensible pattern of capitalized and not capitalized words," and failed to clearly identify each defendant by name and articulate specific facts about that defendant's wrongful conduct); Favaloro v. BJC Healthcare, 2015 WL 1603054, at *2 (E.D. Mo. Apr. 9, 2015) (denying leave to file amended complaint for failure to comply with Rule 8 in relatively simple employment action where complaint was "90 pages long, include[d] 959 paragraphs, multiple subparagraphs, sub-subparagraphs (i.e., ¶¶ 800.68.1, 800.68.2, 800.68.2, *et seq*.), and contain[ed] wholly irrelevant and scandalous material"). The allegations are actually quite straightforward and the Court believes that defendants will have no difficulty framing a response to the complaint. The Court also joins the judges in Aldridge, Laney, and Laird in finding that the complaint's factual allegations and the supporting exhibits to which defendants object are relevant to plaintiff's municipal liability claims. Finally, the Court rejects defendants' argument that allegations regarding the Templeton settlement agreement violate Rule 408(a), Fed. R. Evid.

See Aldridge, 2019 WL 1695982, at *4 (evidence rules govern admission of evidence, not pleading standards); Laney, 2019 WL 2423308, at *3 (same).

The Court will deny defendants' motion to dismiss plaintiff's amended complaint pursuant to Rule 8(a).

B. Motion to strike under Rule 12(f)

Federal Rule of Civil Procedure 12(f) provides that a court may strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter." Although courts have liberal discretion to strike pleadings under Rule 12(f), striking a party's pleading is an extreme measure that is viewed with disfavor and infrequently granted. Nationwide Ins. Co. v. Cent. Mo. Elec. Co-op, Inc., 278 F.3d 742, 748 (8th Cir. 2001); Stanbury Law Firm, P.A. v. IRS, 221 F.3d 1059, 1063 (8th Cir. 2000). "In ruling on a motion to strike, the Court views the pleadings in the light most favorable to the pleader." Shirrell v. St. Francis Med. Ctr., No. 1:13-CV-42 SNLJ, 2013 WL 3457010, at *1 (E.D. Mo. July 9, 2013) (citation omitted). "To prevail on a motion to strike, the movant must clearly show that the challenged matter has no bearing on the subject matter of the litigation and that its inclusion will prejudice the defendants." Aldridge, 2019 WL 1695982, at *15 (citing 2 James W. Moore, et al., Moore's Federal Practice § 12.37[3] (3rd ed. 2018) (internal quotation marks omitted).

As an alternative to their motion to dismiss, defendants ask the Court strike as immaterial and impertinent paragraphs containing allegations regarding the Stockley verdict, Amended Complaint at ¶¶ 14-18, public reaction, id. at ¶¶ 20-21, and the Templeton consent decree, id. at ¶¶ 30-31, 33-35. "Immaterial claims are those lacking essential or important relationships to the claim for relief. Impertinent claims are those that do not pertain to the issues in question." Simms v. Chase Student Loan Servicing, LLC, 2009 WL 943552, at *2, n.3 (E.D. Mo. Apr. 6, 2009)

7

(citations omitted).  As discussed above, the paragraphs that defendants move to strike are relevant to plaintiff's claims and the issues in this case and are neither immaterial nor impertinent. Defendants fail to meet their burden and the alternative motion to strike will be denied.  Aldridge, 2019 WL 1695982, at *15; see also Laird, 2019 WL 2647273, at *4; Laney, 2019 WL 2423308, at *8.

In paragraph 69, plaintiff alleges that SLMPD officers and City of St. Louis Correctional staff failed to provide appropriate medical attention for the protestors after they were pepper-sprayed or hurt by zip-cuffs.  In paragraph 68, plaintiff quotes policies she attributes to the City and SLMPD regarding medical attention and health screenings for prisoners.  In paragraph 70, plaintiff alleges that defendants' decision to ignore these policies "show[s] a deliberate indifference . . . to the rights of Plaintiff and other injured detainees."  Defendants move to strike these paragraphs, noting that the policies for prisoners are immaterial because plaintiff does not allege that she was arrested.  The Court cannot say that these allegations have "no bearing on the subject matter of the litigation" or that their "inclusion will prejudice the defendants" and so declines to strike them.

Defendants' alternative motion to strike under Rule 12(f) will be denied.

C.  Motion to Dismiss under Rule 12(b)(6)

When considering a 12(b)(6) motion, the district court accepts as true all factual allegations in the complaint and grants all reasonable inferences in favor of the nonmoving party.  Crooks v. Lynch, 557 F.3d 846, 848 (8th Cir. 2009).  A claim for relief "must include sufficient factual information to provide the 'grounds' on which the claim rests, and to raise a right to relief above a speculative level."  Schaaf v. Residential Funding Corp., 517 F.3d 544, 549 (8th Cir. 2008) (quoting Twombly, 550 U.S. at 555 & n.3).  This obligation requires a plaintiff to plead "more

than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. The principle that a court must accept as true all of the allegations contained in a complaint does not apply to legal conclusions. Iqbal, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice").

1. Municipal Liability

In Count III, plaintiff proceeds against the City under Monell v. Department of Social Services of City of New York, 436 U.S. 658 (1978), arguing that the violations of her civil rights arose from policies, practices or customs of the SLMPD and from the City's failure to train, supervise or discipline its officers. Amended Complaint at ¶ 98.

"Section 1983 liability for a constitutional violation may attach to a municipality if the violation resulted from (1) an 'official municipal policy,' (2) an unofficial 'custom,' or (3) a deliberately indifferent failure to train or supervise." Mick v. Raines, 883 F.3d 1075, 1079 (8th Cir. 2018) (quoting Corwin v. City of Independence., MO., 829 F.3d 695, 699 (8th Cir. 2016)).

a. Policy or Custom

In the context of § 1983 municipal liability, the term "policy" refers to "official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." Corwin, 829 F.3d at 700 (internal quotation and citation omitted). "[A]n act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." Board of Cty. Comm'rs of Bryan Cty., Okla. v. Brown, 520 U.S. 397, 404 (1997). To establish liability based on "custom," a plaintiff must demonstrate: (1) the existence of a continuing, widespread, persistent pattern of

unconstitutional misconduct by the governmental entity's employees; (2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and (3) that the plaintiff was injured by acts pursuant to the governmental entity's custom, *i.e.*, that the custom was a moving force behind the constitutional violation. Johnson v. Douglas Cty. Med. Dep't, 725 F.3d 825, 828 (8th Cir. 2013). A plaintiff need not identify a specific unconstitutional policy to survive a motion to dismiss. Crumpley-Patterson v. Trinity Lutheran Hosp., 388 F.3d 588, 591 (8th Cir. 2004). Rather, plaintiff must "allege facts that would support the drawing of an inference that the conduct complained of resulted from the existence of an unconstitutional policy or custom." Id.

Plaintiff alleges that the SLMPD have a pattern of using chemical agents without warning against peaceful protestors complaining about police conduct, and identifies specific occasions in October 2014, November 2014, May 2015, August 2015, July 2017, and early September 2017. Plaintiff also alleges that SLMPD officers continued to use chemical agents even after the City entered into the Templeton settlement agreement in which it specifically agreed not to use such agents to disperse groups of individuals engaged in peaceful protest without providing notice and ensuring a safe means of egress. As in the related cases, these allegations are sufficient to plead a claim of Monell liability based on a policy or custom. Laird, 2019 WL 2647273, at *5, Laney, 2019 WL 2423308, at *5; Aldridge, 2019 WL 1695982, at *9 (allegations "plausibly show the City had notice of a pattern of unconstitutional acts committed by SLMPD officers with respect to using chemical agents against peaceful protestors without first giving warning"). The City's motion to dismiss plaintiff's Monell claims based on an unconstitutional policy or custom will be denied.

b. Failure to Train or Supervise

A municipality may be liable under § 1983 if it failed to properly supervise or train an offending employee who caused a deprivation of constitutional rights, but only if the failure to train or supervise rises to the level of deliberate indifference to the rights of others or tacit authorization of the offensive acts. Humbolt v. Jefferson Cty., Mo., No. 4:15CV415 SNLJ, 2015 WL 3506610, at *2 (E.D. Mo. June 3, 2015) (citing City of Canton, Ohio v. Harris, 489 U.S. 378, 380 (1989) (failure to train); Liebe v. Norton, 157 F.3d 574, 579 (8th Cir. 1998) (failure to supervise)). To state a viable § 1983 claim that the City failed to train or supervise Olsten, plaintiff must plead facts sufficient to show that (1) the City's training or supervision was inadequate; (2) the City was deliberately indifferent to the rights of others in adopting its training or supervision practices, and its failure to train or supervise was a result of deliberate and conscious choices it made; and (3) its alleged training or supervision deficiencies caused plaintiff's constitutional deprivation. Id.; Ulrich v. Pope County, 715 F.3d 1054, 1061 (8th Cir. 2013). "[D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Connick v. Thompson, 563 U.S. 51, 61–62 (2011) (quotation and citations omitted; alteration in original). "Thus, when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program." Id. at 407.

Plaintiff alleges only that the City "has inadequately trained, supervised, and disciplined SLMPD officers, with respect to its officers' use of force." Amended Complaint at ¶ 98. She does not provide facts to support her assertion that the City "adopted deficient supervision and training practices with deliberate indifference to the constitutional rights of others, and that these training

practices were the product of the [City's] deliberate and conscious choices." See Ulrich, 715 F.3d at 1061. As in the related cases, the Court finds that plaintiff's "vague and conclusory" allegation is not sufficient to state a claim for failure to train and supervise. Laird, 2019 WL 2647273, at *6, Laney, 2019 WL 2423308, at *6; Aldridge, 2019 WL 1695982, at *11.

The Court will grant the City's motion to dismiss plaintiff's Monell claims based on failure to train and supervise SLMPD officers. As in Aldridge, the Court will grant plaintiff leave to amend her failure to train and supervise claim. Aldridge, 2019 WL 1695982, at * 11.

### 2. Civil Conspiracy

In Count II, plaintiff alleges that the defendants "conspired together and with others, and reached a mutual understanding to undertake a course of conduct that violated" her civil rights. Amended Complaint at ¶ 88. She further alleges that, "[i]n furtherance of this conspiracy, Defendants used excessive force by deploying chemical agents" against her. Id. at ¶ 89.

"To prove a 42 U.S.C. § 1983 conspiracy claim, a plaintiff must show: (1) that the defendant conspired with others to deprive him of constitutional rights; (2) that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and (3) that the overt act injured the plaintiff." White v. McKinley, 519 F.3d 806, 814 (8th Cir. 2008) (citation omitted). The first element "requires allegations of specific facts tending to show a 'meeting of the minds' among the alleged conspirators." Murray v. Lene, 595 F.3d 868, 870 (8th Cir. 2010) (citations omitted). "The plaintiff is additionally required to prove a deprivation of a constitutional right or privilege in order to prevail on a § 1983 civil conspiracy claim." White, 519 F.3d at 814 (citation omitted).

The City argues that plaintiff's § 1983 conspiracy claim is barred by the intracorporate conspiracy doctrine. The intracorporate conspiracy doctrine provides that "a local government

12

entity cannot conspire with itself through its agents acting within the scope of their employment." Kelly v. City of Omaha, Neb., 813 F.3d 1070, 1078 (8th Cir. 2016). The Eighth Circuit has not addressed whether the doctrine applies to § 1983 conspiracy claims, and Kelly, upon which the City relies, involved a conspiracy claim brought under § 1985. Aldridge, 2019 WL 1695982, at *8. The judges in this District have declined to apply this doctrine to § 1983 civil conspiracy claims in the other Stockley protest cases, see Faulk, 2019 WL 3304716, at *5; Newbold v. City of St. Louis, Missouri, No. 4:18CV1572 HEA, 2019 WL 3220405, at *6 (E.D. Mo. July 16, 2019); Aldridge, 2019 WL 1695982, at *7-8; Laird, 2019 WL 2647273, at *5, as well as previous unrelated cases, see Powers v. City of Ferguson, 229 F.Supp.3d 894, 906 (E.D. Mo. 2017); Golden v. Moutray, 2018 WL 1784395, at *4 (E.D. Mo. Apr. 13, 2018) (noting cases holding that intracorporate conspiracy doctrine does not apply in excessive force claims). Here, too, the Court finds that it is inappropriate to apply the intracorporate conspiracy doctrine at this stage.

The City also argues that plaintiff's § 1983 conspiracy claim fails because all of the underlying claims fail. This argument fails, regardless of the Court's ruling on defendant's remaining arguments, because the defendants did not seek dismissal of plaintiff's § 1983 claims against Olsten. See White v. McKinley, 519 F.3d 806, 815 (8th Cir. 2008) (plaintiff's conspiracy claim survived summary judgment because district court denied summary judgment on due process claim).

3. Defendant Hayden's Motion to Dismiss the § 1983 Claims

Defendant Hayden seeks dismissal, arguing in general terms that there is no *respondeat superior* liability under § 1983. He further contends that he cannot be held liable for Olsten's use of force in the absence of any allegation that he personally participated or tacitly collaborated in Olsten's use of force.

13

While the doctrine of *respondeat superior* does not apply to § 1983 cases, a supervisor may still be individually liable under § 1983 "(1) if the supervisor directly participated in the constitutional violation; (2) if the supervisor failed or refused to intervene when a constitutional violation took place in his presence; (3) if the supervisor's failure to train or supervise the employee caused the constitutional violation; or (4) if the supervisor created a policy or custom under which the constitutional violation occurred." Laird, 2019 WL 2647273, at *4 (quoting B.J.G. ex rel. McCray v. St. Charles Cty. Sheriff, No. 4:08CV1178 CDP, 2010 WL 1838414, at *3 (E.D. Mo. May 6, 2010), aff'd 400 F. App'x 127 (8th Cir. 2010)). "The supervisor must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what [he or she] might see." Id. (quoting Ottman v. City of Indep., Mo., 341 F.3d 751, 761 (8th Cir. 2003)).

As noted by the Court in Aldridge, defendant Hayden's motion to dismiss does not address plaintiff's claim in Count I that defendants violated her First Amendment rights to freedom of speech and association or her claim in Count II that defendants conspired to deprive her of her civil rights. Rather, his argument is directed solely to a claim for failure to intervene in Olsten's use of excessive force. Because defendant Hayden is not named in plaintiff's excessive force claim, however, his motion to dismiss the § 1983 claims against him is moot. See Aldridge, 2019 WL 1695982, at * 5-7.

In the related case arising from this incident, the Court granted the plaintiff leave to amend his complaint to assert a Fourth Amendment claim against Hayden for failure to intervene to prevent Olsten's use of pepper spray. Aldridge, 2019 WL 1695982, at *6 n.7 (noting that plaintiff pleaded facts that potentially support such a claim against Hayden). The Court will accordingly extend the same opportunity to plaintiff in this case.

4. <u>State Law Claims — Sovereign Immunity</u>

The City seeks dismissal of plaintiff's state law tort claims, arguing that the claims are barred by sovereign immunity.

"[I]n the absence of an express statutory exception to sovereign immunity, or a recognized common law exception such as the proprietary function and consent exceptions, sovereign immunity is the rule and applies to all suits against public entities[.]" <u>Thomas v. City of St. Louis, Missouri</u>, No. 4:18-CV-01566 JAR, 2019 WL 3037200, at *7 (E.D. Mo. July 11, 2019) (quoting <u>Metro. St. Louis Sewer Dist. v. City of Bellefontaine Neighbors</u>, 476 S.W.3d 913, 921-22 (Mo. 2016)). Missouri law provides three statutory exceptions to sovereign immunity, including, as relevant here, when a political subdivision purchases liability insurance to cover certain tort claims, in the amount of and for the purposes covered by the insurance purchased. <u>Id.</u> (citing Mo. Rev. Stat. § 537.610.1 and <u>Hammer v. City of Osage Beach</u>, 318 F.3d 832, 841 (8th Cir. 2003)). "[A] plaintiff must specifically plead facts demonstrating that the claim is within this exception to sovereign immunity" by pleading the existence of insurance and that the insurance covers the plaintiff's claim. <u>Id.</u> (quoting <u>Epps v. City of Pine Lawn</u>, 353 F.3d 588, 594 (8th Cir. 2003)).

Here, plaintiff alleges:

> [The City] obtains insurance from the Public Facilities Protection Corporation, a not for profit corporation into which the City pays funds yearly. The funds are later disbursed by the corporation to pay claims against the City.
>
> Alternatively, the City's relationship with the PFPC serves as a self-insurance plan. The 2017 Comprehensive Annual Financial Report for the City of St. Louis, Missouri states "[t]he PFPC is reported as if it were part of the primary government because its sole purpose is to provide the City with a defined and funded self-insurance program for claims, judgments, and other related legal matters...."
>
> By possessing such insurance or self-insurance, the City has waived sovereign immunity on state claims pursuant to § 537.610.1, RSMo.

Amended complaint at ¶¶ 105-07; 115-17; 137-39.

15

The Court agrees with the other judges in this District who have held that the same or similar allegations of PFPC insurance or self-insurance are sufficient at this stage to demonstrate that plaintiff's state-law tort claims fall within an exception to sovereign immunity under § 537.610.1. See, e.g., Thomas, 2019 WL 3037200, at *7; Laird, 2019 WL 2647273, at *6; Laney, 2019 WL 2423308, at *7; Aldridge, 2019 WL 1695982, at *13; see also Fortenberry v. City of St. Louis, No. 4:18-CV-01937-JCH, 2019 WL 1242671, at *7 (E.D. Mo. Mar. 18, 2019). The Court will therefore deny the City's motion to dismiss plaintiff's state-law tort claims on the basis of sovereign immunity.

5. State Law Claims — Official Immunity

Defendants Hayden and Olsten argue that they are entitled to official immunity on plaintiff's state law tort claims. Official immunity "protects public officials from liability for injuries arising out of their discretionary acts or omissions, but not from liability in claims arising from their performance of ministerial acts." Thomas, 2019 WL 3037200, at *7–8 (quoting Reasonover v. St. Louis Cty., Mo., 447 F.3d 569, 585 (8th Cir. 2006)). "[A] police officer's decision to use force in the performance of his duties is discretionary rather than ministerial." Id. (quoting Davis v. White, 794 F.3d 1008, 1013 (8th Cir. 2015) (citation omitted). It is well established, however, that official immunity "does not apply to discretionary acts done in bad faith or with malice." Aldridge, 2019 WL 1695982, at *14 (quoting Blue v. Harrah's North Kan. City, LLC, 170 S.W.3d 466, 479 (Mo. Ct. App. 2005). "Acting with malice requires an actual intent to cause injury." Wealot v. Brooks, 865 F.3d 1119, 1129 (8th Cir. 2017) (citation omitted). "A finding of bad faith embraces more than bad judgment or negligence. It imports a dishonest purpose, moral obliquity, conscious wrongdoing, or breach of a known duty through some ulterior motive." Id.

16

In Aldridge, the Court addressed the application of the official immunity doctrine to the tort claims against defendants Hayden and Olsten arising from the same incident at issue here. The Court stated:

> In this case, the complaint expressly alleges the legal conclusions that Olsten and Hayden acted with malice, bad faith, and the intent to harm plaintiff. These conclusions, which serve as part of the framework for the claim but which the Court does not accept as true, Iqbal, 556 U.S. at 678, are supported with the following factual allegations the Court must accept as true: Defendant Olsten sprayed pepper spray into plaintiff's face without warning, although plaintiff was not engaged in any unlawful activity and Olsten had no reason to feel threatened, after Olsten yelled an obscenity at and moved toward peaceful protestors in an unsuccessful attempt to goad and incite them, and after other officers had attempted to restrain and calm a visibly agitated Olsten; and defendant Hayden observed and recorded all of his subordinate Olsten's conduct from five feet away but took no action to prevent it.
>
> Assuming that Hayden and Olsten's actions in policing the peaceful protest outside of Busch Stadium and in determining to use force were discretionary, the complaint's factual allegations accepted as true describe a conscious abuse of official duty and power and an intent to injure that give rise to a reasonable inference of malice or bad faith, and are adequate to survive a motion to dismiss. Compare Jiang v. Porter, 156 F. Supp. 3d 996, 1006 (E.D. Mo. 2015) (denying motion to dismiss based on official immunity where the complaint alleged police officer defendants acted with malice, bad faith, and the intent to harm plaintiff, and asserted factual allegations supporting the inference the defendants acted with these requisites to disqualify them from official immunity); Moore v. City of Ferguson, Mo., 2015 WL 4525522, at *3 (E.D. Mo. July 27, 2015) (denying motion to dismiss based on official immunity where plaintiff alleged "ample allegations going to bad faith or malice" where the complaint stated police officers used a Taser on plaintiff without any legitimate police purpose and only to inflict pain); Taylor *ex rel.* Taylor v. Isom, 2013 WL 1867106, at *9 (E.D. Mo. May 2, 2013) (denying motion to dismiss based on official immunity where plaintiff alleged she was arrested without probable cause and police officer ordered her arrested because she "voiced her displeasure at the method by which the officers were arresting [a] third party.")

Aldridge, 2019 WL 1695982, at *14. As in Aldridge, the Court will deny defendants' motion to dismiss plaintiff's state law claims on the basis of official immunity.

6. Punitive Damages

Defendants assert that plaintiff cannot recover punitive damages against the City on her state law claims under § 573.610.3. Plaintiff does not address this argument in her response brief, but plaintiffs in related cases have conceded this point. See Thomas, 2019 WL 3037200, at *8; Laird, 2019 WL 2647273, at *7. And, because plaintiff's claims against Hayden and Olsten in their official capacities are equivalent to claims against the City, plaintiff is likewise barred from recovering punitive damages from them in their official capacities. Accordingly, the Court will strike plaintiff's requests for punitive damages on her state-law claims against the City and against Hayden and Olsten in their official capacities only.

**Conclusion**

For the reasons discussed above, the Court will grant in part and deny in part the defendants' motion to dismiss. Defendants' requests for relief under Rule 8(a) and Rule 12(f) will be denied, while their request for relief under Rule 12(b)(6) will be granted in part, denied in part, and denied in part as moot. Specifically, the motion will be denied as moot as to plaintiff's § 1983 Fourth and Fourteenth Amendment excessive force claim against defendant Hayden, as the complaint does not plead such a claim. The motion will be denied as to the § 1983 conspiracy claim in Count II and the Monell policy or custom claims in Count III. The motion will be granted as to the failure to train and supervise claims in Count III. The motion will be denied as to plaintiff's state law claims against the City on the basis of sovereign immunity, and denied as to plaintiff's state law claims against defendants Hayden and Olsten on the basis of official immunity. Plaintiff will be granted leave to amend her complaint to assert Fourth and Fourteenth amendment claims against defendant Hayden and Monell failure to train and supervise claims against the City.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' motion to dismiss [Doc. # 24] is **granted in part** and **denied in part**. The motion is **granted** with respect to (a) that portion of plaintiff's § 1983 Monell claims against defendant City of St. Louis in Count III based on failure to train and supervise and (b) plaintiff's request for punitive damages on state-law claims against the City of St. Louis and Hayden and Olsten in their official capacities. The motion is **denied as moot** as to Fourth and Fourteenth Amendment excessive force claims against defendant Hayden; and is **denied** in all other respects.

**IT IS FURTHER ORDERED** that defendants' alternative motion to strike is **denied**.

**IT IS FURTHER ORDERED** that plaintiff is granted leave to file a second amended complaint by **August 21, 2019**, to assert Fourth and Fourteenth Amendment excess force claims against defendant Hayden, and Monell failure to train and supervise claims against the City.

**IT IS FURTHER ORDERED** that, if plaintiff does not timely file a second amended complaint, the Court will issue an order of partial dismissal with respect to the Monell claims against the City in Count III for failure to train and supervise.

**IT IS FURTHER ORDERED** that if plaintiff does not file a second amended complaint, defendants shall file their answers by **August 28, 2019**. If plaintiff files a second amended complaint, defendants shall file their answer(s) within the time allowed by Rule 15(a)(3), Fed. R. Civ. P.

/s/ *John M. Bodenhausen*
JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE

Dated this 6th day of August, 2019.