UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CRYSTAL BROWN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:18 CV 1676 JMB |
| | ) |
| CITY OF ST. LOUIS, MISSOURI, JOHN HAYDEN, and WILLIAM OLSTEN, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

In 2017, plaintiff Crystal Brown participated in protests near Busch Stadium, in downtown St. Louis, Missouri, in the aftermath of the acquittal of former St. Louis police officer Jason Stockley in the killing of Anthony Lamar Smith. In the evening of September 29, 2017, at the corner of Walnut and Broadway Streets, she was among a group of individuals who were pepper sprayed by St. Louis police officer William Olsten. At the time, Police Commissioner (then a major) John Hayden was present at the scene in a supervisory capacity. As a result of being pepper sprayed, Brown allegedly experienced pain, burning in her eyes, labored breathing, and emotional distress. In her amended complaint filed pursuant to 42 U.S.C. § 1983 (Doc. 36), she alleges that the incident was in retaliation for the exercise of her First Amendment rights (Count I); that the City of St. Louis ("City") employed unconstitutional policies and practices by failing to train and supervise its police officers and employed unconstitutional customs in searching and seizing individuals (Count II); that defendant Olsten used excessive force (Count IV); and that defendant Hayden failed to intervene (Count V), all in violation of the Fourth Amendment. She further alleges state law claims of negligent infliction of emotional distress (Count III) and battery (Count

Page **1** of 14

VI). In an amended cross-claim, defendant Olsten claims that the City owes him defense and indemnification based on local and state law (Doc. 85).[1]

Now pending before the Court are defendant City's and Hayden's motion for summary judgment on plaintiff's claims (Doc. 95), Olsten's motion for summary judgment on plaintiff's claims and the cross-claim (Doc. 102) and the City's motion to dismiss or stay cross-claim (Doc. 108). The motions are fully briefed. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons set forth below, the City and Hayden's motion for summary judgment (Doc. 95) is **GRANTED in part and DENIED without prejudice in part**, Olsten's motion for summary judgment (Doc. 102) is **GRANTED in part and DENIED without prejudice in part**, and the City's motion to dismiss or stay cross-claim is **DENIED without prejudice**.

## Background

The following facts are undisputed except where indicated; disputed facts are viewed in a light most favorable to the non-moving party. McGowan, Hurst, Clark & Smith, P.C. v. Commerce Bank, 11 F.4th 702, 710 (8th Cir. 2021).

Plaintiff's claims arise within the context of a series of protests and police responses in the greater St. Louis area that occurred after Stockley's acquittal on first degree murder charges on September 15, 2017 (City's/Hayden's Statement of Uncontroverted Material Facts ("SUMF"), Doc. 97, ¶¶ 1, 2, 15; Olsten's Statement of Uncontroverted Material Facts ("OSUMF"), Doc. 104, ¶ 2). Some protests were peaceful, and others were not (SUMF ¶¶ 8, 10, 12). Plaintiff participated

---

[1] Plaintiff's claims are similar, if not identical, to claims made in a number of other cases filed in this district related to the same September 29, 2017 protest including: Amir Brandy v. City of St. Louis, Missouri et al., Case No. 4:18 cv 1674 JCH; Rasheen Aldridge v. City of St. Louis, Missouri et al., Case No. 4:18 cv 1677 SRC; Darryl Gray v. City of St. Louis, Missouri et al., Case No. 4:18 cv 1678 JCH; Calvin Kennedy v. City of St. Louis, Missouri et al., Case No. 4:18 cv 1679 JCH; Heather De Mian v. City of St. Louis, Missouri et al., Case No. 4:18 cv 1680 AGF; and, Jazmin Franks v. City of St. Louis, Missouri et al., Case No. 4:19 cv 2663-RWS.

in a protest on September 29, 2017 near Busch Stadium (SUMF ¶ 33; OSUMF ¶ 5). During that protest and as the crowd was moving on, there was an altercation between police officers and at least two protestors that resulted in one protestor being tased by police and two protestors being arrested (SUMF ¶ 22; OSUMF ¶¶ 14, 16). Defendant Olsten was not involved in the altercations, the tasing, or the arresting, but did assist in escorting one arrestee away from the area (SUMF ¶ 23; OSUMF ¶ 17).

During these arrests, several protestors, including plaintiff, returned to the area and yelled and screamed at the police, including Olsten who was handing an arrestee to another officer (SUMF ¶¶ 24, 25; OSUMF ¶¶ 18, 19). Olsten commanded the group to "get back" multiple times while holding his pepper spray cannister in his hand (SUMF ¶ 29; OSUMF ¶ 20). One protestor, Amir Brandy, and Olsten then engaged in a shouting match which is repeated here for context, although the exact particulars of the exchange are not relevant to plaintiff's claims. Brandy stated "if you put that shit in my face, I'll fuck you up" a few times (SUMF ¶ 26). In response, Olsten taunted the protestors and escalated the confrontation with Brandy by stating "come and fuck me up" while telling him to "keep coming" and motioning him forward with the hand holding the pepper spray (Plaintiff's Statement of Additional Facts ("PSUMF"), Doc. 99, ¶¶ 23, 25, 104, 108). During this confrontation, a female voice shouts out "shoot this motherfucker" or "shut this motherfucker down" – the parties dispute the exact words (SUMF ¶ 31 (including plaintiff's response)). At which point, Olsten deploys his pepper spray towards the crowd, striking plaintiff who was standing near Brandy (SUMF ¶¶ 32, 33; OSUMF ¶ 36). During the verbal exchange between Brandy and Olsten, Commissioner Hayden was standing near (perhaps within 5 feet of) Olsten but had his back turned to the events (SUMF ¶¶ 36, 37). He did not order Olsten to deploy pepper spray and had no knowledge that pepper spray would be deployed (SUMF ¶¶ 34, 37).

These events are captured by three video recordings, two of which have audio components. One video was recorded by Heather Di Mian and captures a number of protestors running towards where the arrests were occurring; Olsten pepper spraying a number of people; and Di Mian's verbal response to the events.  Another video has no audio and appears to be a traffic camera perched atop a traffic signal or pole.  It is a downward view of the events and captures: one of the arrests (where the person was tased); officers escorting the arrestee while a crowd of persons follow; and then, Olsten deploying his pepper spray and dispersing the crowd.  The video also shows the aftermath, including various protestors who appeared visibly and negatively affected by the pepper spray.  The third video is referred to as "Maverick" by the parties and appears to be recording Brandy's actions and the events surrounding him.  The video and audio show the verbal exchange between Brandy and Olsten and plaintiff is visible in the video for a few seconds.  While the parties dispute some of the details of what is depicted in the videos, which, of course, are open to interpretation, the salient events are undisputed: after the individuals were arrested, a group of protestors returned to the area of the arrests, Brandy and Olsten engaged in a verbal confrontation with Olsten encouraging the confrontation, and Olsten deployed his pepper spray in a sweeping motion that disperses the crowd.

Olsten's use of pepper spray in this situation was not investigated by Commissioner Hayden nor did he speak to Olsten about the event (OSUMF ¶ 63, 67).  There is no evidence that any person was arrested or detained during the incident.

Additional facts will be included below if necessary.[2]

---

[2] The parties briefs and statement of facts include various and detailed facts regarding the historical significance of the protests, prior police action during previous protests, various legal documents including a consent decree, prior cases involving similar circumstances, and other material.  As will be demonstrated below, it is unnecessary to recount all of this evidence in detail in this memorandum and order.

**Legal Standard**

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under Rule 56, a party moving for summary judgment bears the burden of demonstrating that no genuine issue exists as to any material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a fact is material if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Once the moving party discharges this burden, the non-moving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Anderson, 477 U.S. at 247. The non-moving party may not rest upon mere allegations or denials in the pleadings. Id. at 256. "Factual disputes that are irrelevant or unnecessary" will not preclude summary judgment. Id. at 248. The Court must construe all facts and evidence in the light most favorable to the non-movant, must refrain from making credibility determinations and weighing the evidence, and must draw all legitimate inferences in favor of the non-movant. Id. at 255.

**Discussion**

I.  § 1983 claims (Counts I, II, IV, and V)

Olsten and Hayden argue that they are entitled to qualified immunity on Counts I, IV and V, the claims alleging § 1983 claims of retaliation, excessive force, and failure to intervene, respectively. "Qualified immunity shields a government official from suit under § 1983 if his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Kelsay v. Ernst, 933 F.3d 975, 979 (8th Cir. 2019) (citations omitted).

"Qualified immunity analysis requires a two-step inquiry: (1) whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the defendant's alleged misconduct." Morgan v. Robinson, 920 F.3d 521, 523 (8th Cir. 2019) (quotation marks and citations omitted). The doctrine "protects all but the plainly incompetent or those who knowingly violate the law." City of Tahlequah, Oklahoma v. Bond, __ U.S. __, 142 S.Ct. 9, 11, 2021 WL 4822664, *2 (2021).

It is within the Court's discretion to determine which prong of the qualified immunity analysis to address first. Kelsay, 933 F.3d at 979. The first prong requires an analysis of the substantive claims against each defendant. As to the second prong, a right is clearly established when it is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" Rivas-Villegas v. Cortesluna, __ U.S. __, 142 S.Ct. 4, 7, 2021 WL 4822662, *2 (2021) (per curiam) (citation omitted). Although a direct case on point is not required, "existing precedent must have placed the statutory or constitutional question beyond debate." Id. In other words, "[i]t is not enough that a rule be suggested by then-existing precedent; the rule's contours must be so well defined that it is clear to a reasonable officer that his conduct was unlawful in the situation he confronted." City of Tahlequah, Oklahoma, 142 S.Ct. at 11 (considering a Fourth Amendment excessive force claim).

    A. First Amendment Retaliation (Count I)

The parties offer little detail about plaintiff's involvement in the September 29, 2017 protest other than to show that she was present and pepper-sprayed by Olsten. In her second amended complaint (Doc. 36), plaintiff alleges that defendants Olsten and Hayden interfered with her "ability to gather information and cover a matter of public interest" and caused a "chilling effect on her ability to participate in free public discourse" (Doc. 36, ¶¶ 76, 79). In his motion,

defendant Olsten briefly states that he is entitled to judgment because "he did not violate clearly established statutory or constitutional rights of which a reasonable person would have known" (Doc. 102, p. 2). His memorandum in support (Doc. 103) does not elaborate on his argument. In response, plaintiff argues that Olsten pepper sprayed her "in a gratuitous and punitive manner for exercising her First Amendment rights" (Do. 116, p. 9) and that her right to be free from such action was clearly established. While defendant's arguments are limited, plaintiff has fully addressed the question of whether Olsten is entitled to qualified immunity.

Hayden argues that there is no evidence that he was involved in any retaliatory act (Doc. 96, p. 12). In response, plaintiff mostly focuses on her excessive force claim and argues that Hayden did nothing to de-escalate the situation and thereby tacitly encouraged Olsten's actions (Doc. 105, p. 24). Tellingly, plaintiff does not indicate what evidence exists that Hayden himself engaged in retaliatory conduct.

In any event, "[a] citizen's right to exercise First Amendment freedoms 'without facing retaliation from government officials is clearly established'" by at least 2017. Baribeau v. City of Minneapolis, 596 F.3d 465, 481 (8th Cir. 2010) (quoting Kilpatrick v. King, 499 F.3d 759, 767 (8th Cir. 2007)). First amendment activities include news reporting, Branzburg v. Hayes, 408 U.S. 665, 681 (1972), filming and verbally questioning police activity, Hoyland v. McMenomy, 869 F.3d 644, 657 (8th Cir. 2017), watching interactions between police and citizens without interfering, Walker v. City of Pine Bluff, 414 F.3d 989, 992-993 (8th Cir. 2005), and asking a police officer for his badge number during an arrest, Peterson v. Kopp, 754 F.3d 594, 603 (8th Cir. 2014). "It is also true that public places historically associated with the free exercise of expressive activities, such as streets, sidewalks, and parks are considered, without more, to be public forums" where "the government's ability to permissibly restrict expressive conduct is very limited . . . ."

United States v. Grace, 461 U.S. 171, 177 (1983) (quotation marks and citation omitted) (considering government restrictions of First Amendment activity).  Thus, the right to peacefully protest, verbally question police action, and engage in new-gathering activity in a public space without facing retaliation was clearly established at the time of the events of September 29, 2017.

Nonetheless, Hayden and Olsten are entitled to qualified immunity because the undisputed facts show that they did not violate plaintiff's clearly established rights.  To prevail on a First Amendment retaliation claim, plaintiff must show that: "' (1) [s]he engaged in a protected activity, (2) the government official took adverse action against [her] that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity."  Burbridge v. City of St. Louis, Missouri, 2 F.4th 774, 781 (8th Cir. 2021) (quoting Peterson, 754 F.3d at 602 (8th Cir. 2014)).  While it is undisputed that plaintiff engaged in protected activity and it is at least a question of fact whether pepper-spraying a person would chill such activity,[3] plaintiff has not shown that Olsten's or Hayden's actions (or lack of action) were motivated, even in part, by the exercise of her protected activity.  There is no showing that "defendant would not have taken the adverse action but for harboring retaliatory animus against the plaintiff because of [her] exercise of [her] First Amendment rights."  Mitchell v. Kirchmeier, 28 F.4th 888, 896 (8th Cir. 2022).  Put another way, plaintiff has presented no "evidence of a causal connection between the constitutionally protective activity and the adverse action."  Revels v. Vincenz, 382 F.3d 870, 876 (8th Cir. 2004).  At most, plaintiff has shown that she was present and affected by pepper spray that Olsten directed at a group of persons.

---

[3] Plaintiff argues that pepper spraying an individual is excessive force within the context of a First Amendment retaliation claim.  It is unnecessary to address this argument because the retaliatory action need not be unconstitutional itself; the action must merely be reasonably considered to chill speech.  Madewell v. Roberts, 909 F.2d 1203, 1206 (8th Cir. 1990) ("This court has recognized the established rule that an act in retaliation for the exercise of a constitutionally protected right is actionable under Section 1983 even if the act, when taken for a different reason, would have been proper." (quotation marks and citations omitted)).

She has not shown that they were aware of her presence, that they objected in any way to her presence or her activities, and/or that they intentionally directed the pepper spray at her (or did nothing) because of her First Amendment activities.  See Quraishi v. St. Charles County, Missouri, 986 F.3d 831, 838 (8th Cir. 2021) (retaliatory motive can be shown with evidence demonstrating officer singled out reporters for adverse action).  Thus, plaintiff cannot show that she was targeted because of her First Amendment activity.  Baribeau, 596 F.3d at 481 (stating that "the plaintiffs must show that the retaliatory motive was a but-for cause of the arrest -- i.e., that the plaintiffs were singled out because of their exercise of constitutional rights" (quotation marks and citation omitted)); Peterson, 754 F.3d at 602 (8th Cir. 2014) (where officer pepper-sprayed a particular person and not others in the area).   Accordingly, Olsten and Hayden are entitled to qualified immunity on Count I.

    B.   Fourth Amendment Excessive Force (Count IV)

An excessive force claim is typically considered in the context of the Fourth Amendment's prohibition against unreasonable searches and seizures.  Graham v. Connor, 490 U.S. 386, 393-394 (1989); See, e.g., Jacobsen v. Klinefelter, 992 F.3d 717, 721-722 (8th Cir. 2021); Tatum v. Robsinson, 858 F.3d 544,548-549 (8th Cir. 2017).  To prevail on such a claim, plaintiff must show that she was seized and that she was seized in an unreasonable manner based on the facts and circumstances of this particular case.  Graham, 490 U.S. at 396.  A seizure occurs when "by means of physical force or a show of authority, his freedom of movement is restrained.  Only when such restraint is imposed is there any foundation whatever for invoking constitutional safeguards." United States v. Mendenhall, 446 U.S. 544, 553-554 (1980); Terry v. Ohio, 392 U.S. 1, 19 n.16 (1968) ("Obviously, not all personal intercourse between policemen and citizens involves

'seizures' of persons.  Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred.").

There is no evidence that would support a finding that plaintiff was seized by Olsten within the meaning of the Fourth Amendment.  There is no evidence that Olsten detained or arrested her.  There is also no evidence that he directed her to stop or stay in place nor were there any barriers to her leaving the scene (which according to the videos she did without hindrance).  See Johnson v. City of Ferguson, Missouri, 926 F.3d 504 (8th Cir. 2019) ("'There is no seizure without actual submission.'" (quoting Brendlin v. California, 551 U.S. 249, 254 (2007)).  Therefore, because there is no showing that Olsten violated her Fourth Amendment rights, she cannot prevail on an excessive force claim.

Even if there was such a showing, those rights were not clearly established.  In Quraishi, the Eighth Circuit Court of Appeals considered a claim that news reporters were subjected to excessive force and unreasonably seized when they were singled out and tear-gassed without warning and consequently dispersed.  Id. 986 F.3d at 834.  In concluding that the officer was entitled to qualified immunity on such a claim, the Court held that it is not clearly established that deploying tear gas is a seizure.  Id. at 839-840.  The same conclusion can be reached in this case.  Plaintiff has presented no Supreme Court authority or "a robust consensus of cases of persuasive authority" demonstrating that it was clearly established in 2017 that deploying pepper-spray at a crowd of people is a constitutional violation.  Hanson as Trustee for Layton v. Best, 915 F.3d 543, 548 (8th Cir. 2019) (quotation marks and citations omitted).  Indeed, in each of the cases relied on by plaintiff there was some form of arrest or detention.  See, e.g., Henderson v. Munn, 439 F.3d 497 (8th Cir. 2006); Treats v. Morgan, 308 F.3d 868 (8th Cir. 2002).  Accordingly, Olsten is entitled to qualified immunity on Count IV.

C. Fourth Amendment Failure to Intervene (Count V).

In order to prevail on her failure to intervene claim, plaintiff must show that that Hayden failed to intervene and prevent the excessive force by another officer. Hollingsworth v. City of St. Ann, 800 F.3d 985, 991 (8th Cir. 2015). Plaintiff's failure to intervene claim must fail as a matter of law because she cannot establish that any officer used excessive force. See Zubrod v. Hoch, 907 F.3d 568, 580 (8th Cir. 2018) (stating that "a failure to intervene claim may not prevail in the absence of a showing of excessive force"). And, the Eighth Circuit has not recognized a failure to intervene claim outside of the excessive force context. Hess v. Ables, 714 F.3d 1048, 1052 (8th Cir. 2013) ("outside of the excessive force context, there is no clearly established law regarding a duty to intervene to prevent constitutional violations"). Accordingly, Commissioner Hayden is entitled to qualified immunity on Count V.

D. § 1983 Municipal Liability and/or failure to train or supervise (Count VI)

Similarly, plaintiff's Monell v. Dep't of Soc. Serv. of City of New York, 436 U.S. 658 (1978), claims against Commissioner Hayden and/or the City of St. Louis must fail as a matter of law.

In order to support such a claim against a government entity, plaintiff "must show that there was a policy, custom, or official action that inflicted an actionable injury." Johnson v. Hamilton, 452 F.3d 967, 973 (8th Cir. 2006); Mick v. Raines, 883 F.3d 1075, 1079 (8th Cir. 2018); Monell 436 U.S. 658. An "official policy" can either be unconstitutional on its face or one that is inadequate based on the deliberate or conscious choices of a decisionmaker. Szabla v. City of Brooklyn, Minn, 486 F.3d 385, 389 (8th Cir. 2007). It is a "deliberate choice of a guiding principle or procedure made by the [ ] official who has final authority regarding such matters." Mettler v.

Whitledge, 165 F.3d 1197, 1204 (8th Cir. 1999). To show an unconstitutional custom, plaintiff must demonstrate:

> (1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
>
> (2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and
>
> (3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.
>
> Johnson v. Douglas Cty. Med. Dep't, 725 F.3d 825, 828 (8th Cir. 2013).

Finally, plaintiff may show a deliberately indifferent failure to train or supervise by showing a "pattern of similar constitutional violations by untrained employees." S.M. v. Lincoln County, 874 F.3d 581, 585 (8th Cir. 2017). Plaintiff has presented a wide variety of evidence that she contends demonstrates the City has unconstitutional policies and practices related to policing.

However, the Eighth Circuit has "consistently recognized a general rule that, in order for municipal liability to attach, individual liability first must be found on an underlying substantive claim." Mahn v. Jefferson Cty., Missouri, 891 F.3d 1093, 1099–100 (8th Cir. 2018) (citation omitted); see also Johnson, 926 F.3d 506-507; Granda v. City of St. Louis, 472 F.3d 565, 568 (8th Cir. 2007) ("A claim brought against a municipality under § 1983 is sustainable only if a constitutional violation has been committed pursuant to an official custom, policy, practice or custom of the city."). Both Olsten and Hayden are entitled to qualified immunity on plaintiff's individual constitutional claims against them. Therefore, the City is entitled to summary judgment on her claim of municipal liability

II.  State law claims (Counts III and VI and cross claim)

In Count III, plaintiff alleges that defendants negligently inflicted emotional distress, in Count VI, she alleges that defendants committed battery, and in his cross claim, Olsten asserts that he is entitled to defense and indemnification through various local and state laws.  These claims are before the Court based on supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).  When all claims over which the Court has original jurisdiction are dismissed, this Court may, in its discretion, decline to exercise supplemental jurisdiction.  Id. §1367(c)(3); Glorvigen v. Cirrus Design Corp., 581 F.3d 737, 743 (8th Cir. 2008).  "In fact, when a district court has dismissed every federal claim, as here, 'judicial economy, convenience, fairness, and comity' will usually 'point toward declining to exercise jurisdiction over the remaining state-law claims.'" McManemy v. Tierney, 970 F.3d 1034, 1040–41 (8th Cir. 2020) (quoting Wilson v. Miller, 821 F.3d 963, 970–71 (8th Cir. 2016)).  There are no factors that would caution against dismissing the state law claims.  This matter is not schedule for trial until August, 2022 and the state courts will be a more convenient forum for the remaining purely state law claims and defenses.

In addition, plaintiff's state law claims and defenses and the cross claim raise novel or complex issues of state law that likewise cautions against retaining jurisdiction.  See 28 U.S.C. § 1367(c)(1).  While plaintiff's negligent infliction of emotional distress and battery claims are not novel, she does argue that the City's sovereign immunity defense is waived by the purchase of insurance or self-insurance, which is a novel and complex claim.  See Hendrix v. City of St. Louis, 636 S.W.3d 889, 900 (Mo. App. Ct. 2021).  Moreover, Olsten's cross claim for defense and indemnification based on discrete local law, City of St. Louis Ordinance § 3.10.040(H) and St Louis Metropolitan Police Department Special Order 3-05, § XXII(A), raise unique claims which may be colored by Missouri Statute §590.502(7), which was recently enacted in 2021.  To date,

these is limited or no state law case authority on either of these issues.  See <u>Fielder v. Credit Acceptance Corp.</u>, 188 F.3d 1031, 1038 (8th Cir. 1999) (noting that federal courts should hesitate to exercise jurisdiction over novel, complex, and important issues of state law that have not been addressed by state courts).  Accordingly, this Court declines to exercise supplement jurisdiction over the remaining state law claims and Counts III and VI and the cross claim are dismissed without prejudice.

### Conclusion

For the foregoing reasons, the City's and Hayden's motion for summary judgment (Doc. 95) is **GRANTED in part** as to plaintiff's § 1983 claims **and DENIED without prejudice in part** as to plaintiff's state law claims, Olsten's motion for summary judgment (Doc. 102) is **GRANTED in part** as to plaintiff's § 1983 claims **and DENIED without prejudice in part** as to plaintiff's state law claims, and the City's motion to dismiss case (Doc. 108) is **DENIED without prejudice**.

**IT IS HEREBY ORDERED** that plaintiff's § 1983 claims, Counts I, II, IV, and V, are **DISMISSED with prejudice**.

**IT IS FURTHER ORDERED** that plaintiff's state law claims (Counts III and VI) and Olsten's cross claim (Doc. 85) are **DISMISSED without prejudice**.

The Clerk of Court shall enter judgment and close this case accordingly.

*/s/ John M. Bodenhausen*
JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE

Dated this 12th day of May, 2022